# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                    Case No. 05-Cr-0188

ERIC MIGUEL-CRUZ,

    Defendant.

## DECISION AND ORDER

### NATURE OF CASE

On July 22, 2005, an information was filed against defendant Eric Miguel-Cruz, charging him as an alien with eluding examination and inspection by immigration officers between January 1, 2005, and July 20, 2005, in violation of 8 U.S.C. § 1325(a)(2). Subsequently, the information was dismissed by United States Magistrate Judge Aaron E. Goodstein. On August 26, 2005, Chief United States District Judge Rudolph T. Randa reinstated the information. The defendant has filed a motion to suppress his statement (Docket #24) which will be addressed herein.

### MOTION TO SUPPRESS STATEMENT

Defendant Eric Miguel-Cruz moved to suppress the statement given to Special Agent Steven Krukowski of the Bureau of Immigration and Customs Enforcement (ICE) on July 21, 2005. The defendant asserts that his waiver of his Fifth Amendment rights was not made knowingly, intelligently or voluntarily because his inability to speak and understand English

prevented him from understanding his rights which were read to him in English. On October 14, 2005, the court conducted an evidentiary hearing on the defendant's motion to suppress his statement. Special Agent Krukowski testified at the hearing.

## **Findings of Fact**

On July 21, 2005, Special Agent Krukowski of the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), was asked to assist in processing a number of defendants who had been arrested the previous day. Agent Krukowski, who is not fluent in Spanish, went to the local office of the Bureau of Immigration and Customs Enforcement to assist in the processing. After he arrived at the detention area, he obtained a list with the names of the arrested individuals. He randomly called out the name of Eric Miguel-Cruz which was on the list. The defendant responded when his name was called.

Special Agent Krukowski asked the defendant if he could understand English. The defendant either said, "yes," or indicated that he understood the English language. Special Agent Krukowski asked the defendant to follow him or come with him to the area where the defendant was to be interviewed. When they reached the holding cell, Special Agent Krukowski asked the defendant in English to sit down. He may have gestured where the defendant was to sit. The defendant sat down.

Special Agent Krukowski then took out a United States Department of Immigration and Naturalization Service Record of Sworn Statement form. He read the beginning paragraph of the form which stated that he was employed by the United States Department of Homeland Security, United States Immigration and Customs Enforcement and that he wanted to take a sworn statement from the defendant regarding his immigration status in the United States. The

defendant did not indicate that he could not understand what Special Agent Krukowski was reading.

Special Agent Krukowski then read the defendant his rights in English which were listed on the form. When he asked the defendant if he understood what had just been read to him, the defendant replied, "yes." In response to questions, the defendant indicated that he did not wish to have a lawyer or any other person present to advise him and that he was willing to answer the agent's question at that time. The defendant also responded, "yes," when asked whether the statements he was about to make would be the truth, the whole truth, and nothing but the truth.

Special Agent Krukowski asked the defendant in English whether he had used any other names. The defendant told him that he had used the name Hector Rosario Rivera and that he used this name for work. He told the agent that he was born on January 31, 1984, in Mexico and that he was a citizen of Mexico, as were his parents. When asked if he had been admitted into the United States as a legal permanent resident, the defendant responded, "No." The defendant was asked when, where, and how he last had entered the United States. The defendant responded that he entered "five years ago" at Senora, Arizona, by "walking across desert." He acknowledged that he had no document that permitted him to legally reside in the United States and that he had never been deported or removed from the United States. All the questions were posed to the defendant in English and his responses in English were recorded on the form.

Finally, the defendant was asked whether he had anything else that he would like to say. He responded: "I need help because I have a daughter. I stay here only for my daughter and my job. I don't want any problems. I have no problems with the police."

- 3 -

Special Agent Krukowski then asked the defendant to look at the form and his answers to the questions to make sure that they were correct. If the answers were correct, the defendant was told to place his initials at the end of each page which he did. Agent Krukowski did not show the defendant where to place his initials. The defendant was also told that if any of the answers were incorrect, he should let the agent know. Agent Krukowski also told the defendant to read the statement before he signed it. He saw the defendant looking at the form which he appeared to be reading. The defendant did not read the form out loud. At no time did the defendant state that he did not understand a question or ask for clarification of any of the questions.

Special Agent Krukowski initiated the interview with the defendant in a cell at the ICE office in Milwaukee. No other persons were present during the interview, which lasted approximately twenty minutes. Several other agents were interviewing other arrestees at the time. If Special Agent Krukowski believed that the defendant could not speak English, he would have found another person to interview.

## **Analysis**

The Fifth Amendment privilege against self-incrimination and the right to counsel require the police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). For statements made by a defendant during a custodial interrogation to be admissible in evidence, the defendant's waiver of his Miranda rights must be voluntary, knowing and intelligent. Id. at 479.

The government bears the burden of establishing by a preponderance of the evidence that a defendant knowingly and intelligently waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986). To satisfy this burden, the government must produce sufficient

evidence to establish that under the "totality of the circumstances," the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).

In seeking suppression of his statement, the defendant asserts that when an agent taking a statement from a non-native English-speaking defendant fails to verify that the person understands the Miranda warnings given, courts have held that the government failed to establish that the defendant's waiver of those rights were knowing and intelligent. The defendant cites United States v. Garibay, 143 F.3d 534, 537 (9th Cir. 1998) and United States v. Saleem, 236 F.Supp.2d 625, 631-32 (N.D. Tex. 2002), to support his position. The government opposes the defendant's motion.

In Garibay, the court held that the government failed to meet its burden of proving that the defendant knowingly and intelligently waived his Miranda rights. 143 F.3d at 537. In reaching this conclusion, the court noted that the agent questioned the defendant in English and assumed he was sufficiently proficient in English to understand and waive his rights, despite the fact that the agent admitted he had to rephrase questions when the defendant did not seem to comprehend what was said to him. The court pointed out that the defendant's primary language was Spanish and that every witness at the suppression hearing, including the defendant's former high school counselor, his former football coach, the clinical psychologist who examined him and the probation officer who prepared the defendant's pre-sentence report, testified that at the defendant's request, they would always communicate with him in Spanish.

Moreover, at the hearing, Dr. Beatrice Heller testified that the defendant told her that after his arrest, a female agent spoke to him in Spanish and asked if he preferred to speak in

- 5 -

English or Spanish. The defendant told her Spanish. According to Dr. Heller, the defendant told her that when he tried to elaborate on his answers using Spanish during the interview conducted in English, the agent told him to just answer, "yes" or "no."

In considering the totality of the circumstances, the court recognized that the defendant's IQ was borderline retarded, that he had difficulty understanding the English language and had poor verbal comprehension skills. In addition to other factors, the court noted that the defendant had no previous experience with the criminal process and, therefore, he was not familiar with his Miranda rights and his option to waive those rights.

The facts in the instant case are clearly distinguishable. When asked if he could understand English by Special Agent Krukowski, the defendant either said, "yes," or indicated that he understood English. After reading the defendant his Miranda rights, Agent Krukowski told the defendant he wanted to take a sworn statement from him regarding his immigration status. The defendant did not indicate he could not understand what the agent was reading and, in fact, when asked if he understood what had just been read, the defendant said, "yes."

When questioned, the defendant said he was born in Mexico and was a Mexican citizen as were his parents. He stated that he had entered the United States "five years ago" at Senora, Arizona by "walking across desert." Finally the defendant was asked if he had anything else to say. He responded that he needed help because he had a daughter and that he was here only for his daughter and his job. He said he did not want any problems and had no problems with the police. The defendant then initialed and signed his statement. Thus, unlike the situation in Garibay, the defendant's responses to questions were not limited to simple "yes" or "no" answers. Furthermore, the defendant never said he did not understand a question or ask for any clarification.

- 6 -

Case 2:05-cr-00188-PJG   Filed 10/25/05   Page 6 of 7   Document 31

There is no indication that the defendant has below-average intelligence or that he only conversed with others in Spanish. He also has had prior contact with law enforcement officials, having been convicted of two misdemeanors – resisting or obstructing an officer and disorderly conduct – in 2004. The facts in Saleem also are distinguishable from the facts in this case.

Accordingly, upon due consideration of the relevant factors, the court concludes that the defendant knowingly and intelligently waived his Miranda rights. At the time he waived his rights, the defendant was fully aware of the nature of the right being abandoned and the consequences of his decision. See Moran, 475 US. at 421. Therefore, the defendant's motion to suppress his statement will be denied.

## **CONCLUSION**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to suppress statement be and here by is **denied**. (Docket #24).

Dated at Milwaukee, Wisconsin this 25th day of October, 2005.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge
